WILLIAMSON (UNITED STATES v.). See Cases Nos. 16,725 and 16,726.

WILLIAMSON, JR., The JESSE. See Cases Nos. 7,296 and 7,297.

## Case No. 17,757

### The WILLIAM TABER.

[2 Ben. 329.] [1]

District Court, S. D. New York. April, 1868.

BILL OF LADING — NONDELIVERY — BARRATRY — DAMAGES—PRESUMPTION OF LAW—SALVAGE.

1. Where cotton was shipped at Galveston, on a vessel bound to New York, and bills of lading were given therefor, and, on the voyage, the vessel was barratrously run ashore, and part of the cotton was lost, and a part of it, which had been saved in a damaged condition, was libelled for salvage, and the owners of the cotton paid the amount of salvage decreed, and libelled the vessel on the bills of lading: *Held*, that the vessel was liable to the owners of the cotton for the value of the cotton lost, and for the injury to that which was saved, and for the money paid by them as salvage.

[Cited in The Albany, 44 Fed. 435.]

2. In case of loss or damage to goods covered by a bill of lading, the presumption of law is, that such loss or damage was occasioned by the act or default of the carrier.

In admiralty.

J. H. Choate, for libellants.

C. A. Peabody and W. H. Peckham, for claimant.

BLATCHFORD, District Judge. This is a libel filed by six several parties, owners of cotton in bales, shipped by the steamship William Taber, from Galveston, Texas, via Key West, in Florida, to New York, in March, 1867. The cotton was shipped under bills of lading, signed by the master of the vessel, and given to the agents of the several owners of the cotton. The claim made by the libel covers two grounds of action: (1) A claim for the nondelivery of cotton covered by the bills of lading, and for damage to cotton covered by the bills of lading, that was delivered; (2) a claim that the vessel should refund to the libellants a sum of money, which they were compelled to pay, as salvage on the cotton covered by the bills of lading, by the decree of the district court of the United States for the Southern district of Florida, sitting in admiralty, at Key West, in Florida, on the ground that the salvage was made necessary by the willful and tortious act of the master of the vessel, or some other person in charge of her, in running her ashore near Key West.

The nondelivery of some of the cotton, and the damage to some that was delivered, are

clearly proved, and the claimants have entirely failed to show that the loss or damage was by a peril of the sea, or by any cause for which the vessel is not liable. On the contrary, the evidence is entirely satisfactory to show that the loss and damage were caused by the willful act of the master or the engineer of the vessel, in letting water into her just after she had left Key West, on her way to New York, as a consequence of which she was run ashore. The running of her ashore made the salvage necessary, and, as against the salvors, the owners of the cotton were defenceless in the salvage court, and were obliged to pay the salvage money. The payment of this money being caused directly by the barratrous act of some person in charge of the vessel, the vessel is liable to refund it to those who paid it. The carrier created this lien on the cotton, while lawfully charged with its custody. The lien was a valid one, as between the owners of the cotton and the salvors, although the act by which it was created was a tortious act on the part of the carrier, as between such owners and the carrier. Indeed, the liability of the vessel to refund the salvage money on the cotton may be properly considered as a liability arising on the bills of lading, as the transaction amounts, in effect, to a loss of so much of the cotton by what is, in fact, held to be the default of the vessel. For, if the libellants had not paid the salvage money on the cotton in accordance with the decree of the court, enough of the cotton to pay the salvage would have been sold. This view brings the entire case within the well settled principle, that, in case of loss or damage to goods covered by a bill of lading, the presumption of the law is, that such loss or damage was occasioned by the act or default of the carrier, and the burden of proof is upon the carrier to show that it arose from a cause for which he is not responsible. The answer neither admits nor denies the averments of the libel as to the barratrous acts of the master, but states that the claimant leaves the same to be proved, and that there is no liability on the part of the vessel to the libellants for such acts, and that the reason why there is not is, that such acts are alleged to have been willful, fraudulent, and barratrous. But the law is well established, that where the owner of a vessel is under an obligation imposed upon him by virtue of his office as carrier, he is liable for the willful tort of his servant, if it was committed while in his employ, and in the management of the vessel or conveyance under his control; and this even though the wrong was done in direct opposition to the express commands of the owner. 1 Pars. Mar. Law, bk. 1, p. 394, c. 11. There must be a decree for the libellants, with costs, and a reference to a commissioner to ascertain the damages caused by the loss or damage to the cotton, and by the payment of the salvage money on the cotton.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]